**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

|  |  |  |
|---|---|---|
| **PATRICIA E. CHAMBERLIN,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:11-cv-01059-SI |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Lisa R.J. Porter, KP Law LLC, 16200 S.W. Pacific Hwy., Suite H-280, Portland, OR 97224. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Nancy A. Mishalanie, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**SIMON, District Judge.**

Ms. Patricia E. Chamberlin seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits. For the following reasons, the Commissioner's decision is AFFIRMED.

## BACKGROUND

### A.  The Application

Ms. Chamberlin protectively filed an application for Disability Insurance Benefits ("DIB") on May 9, 2007, alleging disability beginning on October 9, 2004. Tr. 108-112. She alleges disability due to diverticulitis, Crohn's disease, inflammatory bowel, ruptured sigmoid colon, fistulas abscess of sigmoid colon and removal of her rectum and ovaries. Tr. 125. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 16, 70-73, 76-77, 81. An administrative hearing was held on January 19, 2010. After leaving the record open for additional evidence, on February 10, 2010, the ALJ found Ms. Chamberlin to be disabled from October 9, 2004 through April 26, 2007, with a medical improvement that resulted in a change of status to not disabled as of April 27, 2007. Tr.16, 31-67, 11-30. After considering additional evidence submitted to it, the Appeals Council denied Ms. Chamberlin's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. Ms. Chamberlin now seeks judicial review of that decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

OPINION AND ORDER, Page 2

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each

step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R.
     §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
     significant mental or physical duties done or intended to be done for pay
     or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
     such work, she is not disabled within the meaning of the Act. 20 C.F.R.
     §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
     substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's
     regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
     expected to result in death, an impairment is "severe" if it significantly
     limits the claimant's physical or mental ability to do basic work activities.
     20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted
     or must be expected to last for a continuous period of at least 12 months.
     20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
     impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);
     416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
     proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the
     impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
     then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
     416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
     the listed impairments, the analysis proceeds beyond step three. At that
     point, the ALJ must evaluate medical and other relevant evidence to assess
     and determine the claimant's "residual functional capacity" ("RFC"). This
     is an assessment of work-related activities that the claimant may still
     perform on a regular and continuing basis, despite any limitations imposed
     by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c);
     416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC,

the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ began his opinion by noting that Ms. Chamberlin met the insured status requirements of the Social Security Act through September 30, 2007. Tr. 16. The ALJ further noted that Ms. Chamberlin must establish disability on or before that date in order to be entitled

to a period of disability and disability benefits.[1] *Id*. The ALJ then applied the sequential process.

Tr. 16–25. At step one, the ALJ found that Ms. Chamberlin has not engaged in substantial

gainful activity since the alleged onset date of October 9, 2004. Tr. 19. At step two, the ALJ

found that Ms. Chamberlin's Crohn's disease and autoimmune hepatitis were severe

impairments. *Id*. At step three, the ALJ found that Ms. Chamberlin did not have an impairment

or combination of impairments that met or equaled one of the specific impairments listed in the

regulations. Tr. 20, 22.

The ALJ then determined that from October 9, 2004 through April 26, 2007,

Ms. Chamberlin had the RFC to perform sedentary work, except that her pain and fatigue

precluded her from performing full-time employment during that time period. *Id*. For this time

period, at step four the ALJ determined that Ms. Chamberlin was unable to perform past relevant

work and at step five, considering her age, education, work experience and RFC, determined

there were no jobs that existed in significant numbers in the national economy that she could

have performed. Tr. 21. Thus, the ALJ found Ms. Chamberlin was under a disability, as defined

---

[1] Section 423 of the Social Security Act establishes the statutory eligibility requirements to receive a disability insurance benefit, requiring, among other things, that the applicant be considered "insured," which involves a calculation of the number of quarters employed within a certain time frame.  42 U.S.C. § 423. The Ninth Circuit has held "that an individual cannot receive disability benefits for a recurrence of a disability, after a period of medical improvement when the individual was no longer disabled under the Act, unless the individual can establish that the *current* period of disability began on or prior to the expiration of insured status." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1458 (9th Cir. 1994) (emphasis in original). Thus, if an individual applies for benefits after the expiration of insured status (as is the case with Ms. Chamberlin), if the claimant was not disabled on the last day of insured status, then the claimant cannot recover disability benefits for a new period of disability, "even if the claimant suffers a recurrence of the same disability from which the claimant suffered during a time when the claimant [was insured]." *Id*. Any deterioration in condition after that time is irrelevant. *Id*. at 1461 n.4 (quoting with approval *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971)).

by the Social Security Act, from October 2004 through April 26, 2007. Tr. 22. Neither party objects to this finding by the ALJ.

The ALJ also determined that beginning April 27, 2007, Ms. Chamberlin had the RFC to perform light work with the following restrictions: she can only occasionally climb ladders, scaffolds, and ropes; she can occasionally stoop, crawl, crouch and kneel; and she must avoid concentrated exposure to hazards. *Id*. In reaching this conclusion, the ALJ considered Ms. Chamberlin's testimony, but found that it was not fully credible. Tr. 23. In addition, the ALJ considered the submitted written lay testimony. Tr. 22, 24. The ALJ gave significant weight to the opinions of the state reviewing physicians. Tr. 23. The ALJ only gave some weight to the January 25, 2010 opinion of Dr. Al Kaynard, Ms. Chamberlin's treating physician, because it does not distinguish between Ms. Chamberlin's 2010 abilities and her functionality from before the September 30, 2007 last insured date and because it appeared inconsistent with the 2007 chart notes and course of treatment recommended by Dr. Kaynard. Tr. 23. The ALJ gave little weight to the 2008 opinion of Dr. William Johnson, Ms. Chamberlin's surgeon, because his statements appear to be limited to the surgery and post-surgery time frame and he had not seen Ms. Chamberlin since 2006; thus the ALJ considered Dr. Johnson's opinion of little value regarding Ms. Chamberlin's status after August 2006. Tr. 23-24.

For the post-April 26, 2007 time frame, at step four the ALJ found that Ms. Chamberlin was able to perform her past relevant work as an office assistant, both as she performed it and as it is generally performed. Tr. 24. The ALJ did not call a vocational expert ("VE") to testify at the hearing. Tr. 31-67. Based on the finding that Ms. Chamberlin could perform her past relevant work, the ALJ concluded that Ms. Chamberlin's disability ended on April 27, 2007.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *Id.* "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotations omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## DISCUSSION

Ms. Chamberlin seeks review of the determination by the ALJ that her disability ended as of April 27, 2007. Because no party seeks review of the ALJ's determination that Ms. Chamberlin was disabled from October 9, 2004 through April 26, 2007, this Court will not review that determination and will limit its analysis to the determination that Ms. Chamberlin's

OPINION AND ORDER, Page 7

disability ended as of April 27, 2007. Ms. Chamberlin argues that the ALJ erred in making that determination by: (1) failing to properly develop the record by not calling a VE at the hearing; (2) failing to properly develop the record by not taking the testimony of Ms. Chamberlin's husband at the hearing; (3) improperly finding Ms. Chamberlin's subjective symptom testimony not fully credible; (4) improperly rejecting the opinion of Dr. Kaynard, a treating physician; and (5) improperly formulating an RFC as of April 27, 2007 that did not properly assess Ms. Chamberlin's ability to perform activities in an ordinary work setting on a regular and continuing basis, as required by Social Security Ruling ("SSR") 96-8P.

## A.  Failure to Properly Develop the Record

The ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). If the claimant is unrepresented, represented by a lay person, or suffering from a mental illness rendering him or her unable to protect his or her own interests, then "the ALJ must be especially diligent in exploring for all of the relevant facts." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id.* (quoting *Smolen*, 80 F.3d at 1288). Ms. Chamberlin argues that the ALJ failed to properly develop the record by not calling a VE or receiving live testimony from Ms. Chamberlin's husband at the hearing.

### 1.  Failure to call a vocational expert

For the post-April 26, 2007 time period, the ALJ determined at step four that Ms. Chamberlin was able to perform past relevant work, both as she had previously performed it

OPINION AND ORDER, Page 8

and as it is generally performed. Tr. 24. Any of the four steps can be dispositive and if a determination is made that a claimant is or is not disabled at any step, the evaluation need not continue to the next step. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Here, the ALJ's determination that Ms. Chamberlin could perform her past relevant work made it unnecessary for the ALJ to call a VE or proceed to the fifth step to determine whether Ms. Chamberlin had the RFC to perform other work. *Id.*; *see also Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (rejecting contention that ALJ erred by failing to call a VE because ALJ had found plaintiff could perform past relevant work and so did not need to go to step five). The ALJ did not err by failing to call a VE in this case.

### 2. Failure to hear oral testimony from Ms. Chamberlin's husband

Ms. Chamberlin argues that the ALJ failed to properly develop the record because he did not permit Ms. Chamberlin's husband to testify at the hearing. During the hearing, the ALJ alerted Ms. Chamberlin and her counsel to the time constraints of the hearing, noted that 20 minutes remained, queried whether the plan was to call additional witnesses and urged Ms. Chamberlin to use the hearing time wisely. Tr. 56. Despite this warning, Ms. Chamberlin's husband was not called to testify in a timely manner. Tr. 65. He was eventually called, but only when there was insufficient time remaining to hear his testimony. *Id.* Because he was not able to testify live, the ALJ left the record open for seven days and permitted Ms. Chamberlin's husband to submit written testimony during that time period. Tr. 65-66. Counsel for Ms. Chamberlin subsequently submitted her husband's written testimony. Tr. 372-75.

The ALJ must take into account lay testimony, whether oral or written. *See Molina v. Astrue*, 674 F.3d 1104, 1114) (9th Cir. 2012) (lay testimony as to "symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take

OPINION AND ORDER, Page 9

into account"); *Hasel v. Astrue*, No. CV 07-928-PHX-MHM, 2008 WL 4418141 at *8 (D. Ariz. Sept. 29, 2008) ("The oral testimony or written statements of lay witnesses cannot be discounted by an ALJ unless he provides reasons that are germane to each witness."). Due process requires that a hearing be "full and fair." *See, e.g., Martise v. Astrue*, 641 F.3d 909, 921-22 (8th Cir. 2011) ("[U]nder the Fifth Amendment, procedural due process requires disability claimants to be afforded a full and fair hearing."); *Ferriell v. Comm'r of Soc. Sec*, 614 F.3d 611, 620 (6th Cir. 2010) ("In the context of a social security hearing, due process requires that the proceedings be full and fair.") (quotations and citation omitted). In the administrative law context, a full and fair hearing does not require oral testimony; a written record will suffice. *See Grossmuller v. Int'l Union*, 715 F.2d 853, 858 n.5 (3d Cir. 1983); *cf. Toney v. Reagan*, 467 F.2d 953, 958 (9th Cir. 1972) (in administrative law context, full and fair does not necessarily require a trial-like atmosphere).

Here, the ALJ warned Ms. Chamberlin and her counsel when 20 minutes were left in the hearing and urged them to use the remaining time wisely if Ms. Chamberlin wanted to call additional witnesses. The ALJ also left the record open for seven days so that Ms. Chamberlin's husband could submit written testimony, which he did. The fact that his testimony was written and not live did not prevent Ms. Chamberlin from receiving a full and fair hearing, and the ALJ did not err.

**B.  Ms. Chamberlin's Credibility**

Ms. Chamberlin also argues that the ALJ erred based on an "intuitive credibility challenge" that Ms. Chamberlin's "daily activities translate to full time work." Pl.'s Br. at 21. It appears that Ms. Chamberlin is alleging that the ALJ did not provide clear and convincing reasons for finding Ms. Chamberlin's subjective symptom testimony not credible. The credibility

argument is addressed in this section, the argument relating to the RFC and ability to work is addressed in section D below.

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and

third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen*, 80 F.3d at 1284.

Ms. Chamberlin testified at the hearing that her inability to work is a result of: (1) hepatitis C liver problems; (2) Crohn's disease and other gastrointestinal problems that resulted in three major surgeries in which her large intestine and ovaries were removed; (3) arthritis; (4) headaches; and (5) mood and anger issues. Tr. 40-50, 53-55. Ms. Chamberlin was asked to testify regarding her symptoms and limitations between October 9, 2004 and September 30, 2007 (the date last insured), but she often testified in the present tense so it is difficult to determine if she was testifying regarding her limitations during the relevant time period. The Court considers her testimony, unless clearly relating to a later time period, to be describing symptoms and limitations within the relevant time period.

OPINION AND ORDER, Page 12

Ms. Chamberlin testified that her gastrointestinal issues cause her to go to the bathroom an estimated two to two and one-half hours total in a day and that she has constant diarrhea. Tr. 42-43. She stated that she can lift only less than ten pounds, can stand no more than one to two hours without a break, can walk no more than two to two and one-half blocks without a break, and can sit only about two hours without a break. Tr. 60-61. Ms. Chamberlin also testified that she has arthritis, which causes her to drop things and that she suffers from irritability and depression secondary to her other conditions. Tr. 53-55.

The ALJ found that Ms. Chamberlin's Crohn's disease and autoimmune liver condition were severe impairments, but that there is insufficient evidence of the other symptoms and complaints to show that they are more than transient or cause significant vocational limitations. Tr. 19-20. The ALJ, applying the first step of the credibility framework, found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" Tr. 23. In applying the second step, however, the ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible beginning on April 27, 2007, to the extent they are inconsistent with the [RFC] assessment[.]" *Id.* In support of his credibility finding, the ALJ offered two specific reasons: (1) Ms. Chamberlin's inconsistent activities of daily living from April 27, 2007 through the date last insured, as reported by her and her husband; and (2) the disparity between her hearing testimony and the medical evidence from 2007. Tr. 23-24.

### 1.  Activities of Daily Living

The ALJ found that the daily activities described by Ms. Chamberlin and her husband in 2007 "describe an individual whose impairments are less limiting than alleged." Tr. 23-24. Daily activities can form the basis of an adverse credibility finding where the claimant's activities

OPINION AND ORDER, Page 13

either contradict his or her other testimony or meet the threshold for transferable work skills. *See Orn*, 495 F.3d at 639; *Molina*, 674 F.3d at 1112-13. For a credibility analysis, the ALJ "need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'" *Whittenberg v. Astrue*, Civil No. 3:11-cv-00475-AC, 2012 WL 3922151 at * 4 (D. Or. Aug. 20, 2012) (quoting *Molina*, 674 F.3d at 1113); *see also Denton v. Astrue*, No. 3:11-cv-01066-SI, 2012 WL 4210508 at * 6 (D. Or. Sept. 19, 2012) ("While [claimant's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations."). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility).

On May 23, 2007, Ms. Chamberlin submitted a Function Report applying for state disability in which she stated that she could perform light household chores, such as laundry, cleaning, cooking, and outside watering and that she is able to independently attend to her personal needs. Tr. 23, 136-39. She stated that the meals she prepares take one to two hours each, sometimes longer, and that she does the dishes for 45 minutes every day, laundry for 30 minutes four or five times a week, watering for 30 minutes every third day, and ironing 45 minutes two times per week. Tr. 138. She also stated that she could read, watch television, make crafts, shop, visit her daughter, and occasionally go out with her husband. Tr. 23, 136, 139-40. Further, she could shop once a week for one to two hours without the need for someone to accompany her.

Tr. 139-40. At that time, she reported her limitations as standing for no more than three to four hours, sitting for up to three to four hours, and explaining that she would need a break after one and one-half hours of walking or standing. Tr. 141.

On May 23, 2007, Ms. Chamberlin's husband submitted a Function Report to the state disability agency stating that his wife could read, shop, cook three meals per day, do laundry, sew, water outside flowers, and wash dishes. Tr. 144, 146. He further stated that she could not perform heavy house and yard chores, such as vacuuming and mowing, and that he and his wife cannot go out as often as they used to. Tr. 145-46, 149. He stated she goes shopping with her daughter once a week. Tr. 148. Mr. Chamberlin noted his wife's limitations as being able to stand and sit for no more than two to four hours each and that she gets tired after one and one-half to two hours of walking. Tr. 149.

The written records of daily living are in direct conflict with much of Ms. Chamberlin's testimony. At the hearing, she testified that she could stand for one to two hours, but the daily living forms state that she could stand for three to four hours. At the hearing, she testified that she could sit for up to two hours, but the forms report that she can sit for up to three to four hours. At the hearing, she testified that she could walk no more than one and one-half blocks, but the daily living forms report that she can walk for one and one-half hours to two hours. Further, the daily activities reported by Ms. Chamberlin of cooking for several hours each day, shopping, cleaning, watering plants, and other regular activities, even if they do not rise to the level of transferable work skills, are inconsistent with a completely debilitating impairment. *Molina*, 674 F.3d at 1113. Therefore, the ALJ's reliance on Ms. Chamberlin's activities of daily living was a

OPINION AND ORDER, Page 15

clear and convincing reason to find her not credible with regard to her symptoms from April 27, 2007 through September 30, 2007.

### 2.  Inconsistency with reports to treating physicians at the time

The ALJ also found Ms. Chamberlin's subjective testimony regarding her symptoms as of April 27, 2007 not credible because it contradicted with the reports that she made to treating physicians at that time. Tr. 23. A claimant's inconsistent or non-existent reporting of symptoms is competent evidence for an ALJ to consider when making a credibility assessment. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

On January 10, 2007, Ms. Chamberlin reported to Dr. Kaynard that there had not been any particular flare up of her underlying abdominal symptoms and that she had good control of her bowel movements, although she has them approximately ten times per day and they had recently become a little bit more loose with a small amount of blood. Tr. 567. She further noted that she feels asymptomatic except for the loose stool. Tr. 568. Dr. Kaynard assessed that the Crohn's disease appeared to be in remission at that time. Tr. 569. During her January 2007 visit, Ms. Chamberlin's primary concern was the flare of her liver enzyme. *Id.*

On April 26, 2007, Ms. Chamberlin reported to Dr. Kaynard that she was "doing very well" and that although she has "some occasional loose stooling" she "feels much better and is very happy with the improvement in her liver functions." Tr. 563. Dr. Kaynard noted that her liver tests normalized after Ms. Chamberlin's January 2007 visit and treatment with medication and that her liver tests remained essentially normal since then. *Id.* He assessed her autoimmunie hepatitis as "currently under control" and prescribed a slow taper off prednisone. Tr. 564.

The ALJ discounted Ms. Chamberlin's testimony about the debilitating effect of her gastrointestinal issues and autoimmune liver problems after April 26, 2007 because it was

OPINION AND ORDER, Page 16

contradicted by her reports to her treating physicians in January and April 2007. Tr. 23. This finding is supported by substantial evidence in the record. For example, Ms. Chamberlin's testimony that she has "constant" diarrhea and will spend two to two and one-half hours in the bathroom during an eight-hour work day is not supported by her reports during the relevant time period to her treating physician about how well she was doing, that her abdominal symptoms were not flared and were essentially asymptomatic, that she had only "occasional" diarrhea and that she had approximately ten bowel movements in an entire day. Ms. Chamberlin's testimony that her liver problems cause severe exhaustion and swelling of joints is contradicted by her medical records indicating her hepatitis was under control as of April 27, 2007. Further, Ms. Chamberlin admitted during her testimony that in 2007 she was described as doing very well (Tr. 51), that her liver function was normal by April 2007 (Tr. 45), and that her hepatitis was in remission after April 2007 (Tr. 46).

There are additional medical records that contradict Ms. Chamberlin's testimony regarding her symptoms as of the last insured date that were not specifically cited by the ALJ.[2] For example, on June 15, 2007, Ms. Chamberlin reported to Dr. Kaynard that she has about seven to ten bowel movements per day and that she was "satisfied with that and does not want to start an anti-diarrheal medication at this time." Tr. 749. During that visit, Dr. Kaynard noted that Ms. Chamberlin's autoimmune hepatitis and Crohn's disease were "well controlled." Tr. 750. On June 25, 2007, Ms. Chamberlin reported to Dr. Edward Conrad, Jr. that she now has "slower

---

[2] The Court is not permitted to affirm the Commissioner on a *ground* upon which the Commission did not rely, but the Court is permitted to consider additional support for the ALJ's position. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006). Here, the ALJ based his credibility determination, in part, on the ground that Ms. Chamberlin's testimony contradicted her reports to doctors and this Court may consider additional medical records other than those specifically cited by the ALJ in considering that ground.

OPINION AND ORDER, Page 17

bowels" as compared to when she had "active colitis." Tr. 757. On January 21, 2008, Ms. Chamberlin reported to Dr. Conrad that she has been off prednisone since Dr. Kaynard tapered her off in June 2007, her bowel function is "OK," and her bladder function is normal. Tr. 1036.

Although some of the contradictions between Ms. Chamberlin's testimony and her contemporaneous reports to treating physicians in 2007 may be explained because she was testifying at the hearing as to current symptoms and limitations and not to symptoms and limitations from the relevant time period,[3] Ms. Chamberlin was repeatedly instructed to testify only as to the relevant time period. The ALJ can only consider symptoms and limitations from the relevant time period in determining whether a disability was present while Ms. Chamberlin had insured status. *Flaten*, 44 F.3d at 1458-59, 1461. Thus, even if her current symptoms are as Ms. Chamberlin described at the hearing, they are not relevant to the determination of whether she was disabled as of the last insured date. *Id*.

The ALJ offered clear and convincing reasons supported by substantial evidence in finding that Ms. Chamberlin's subjective symptom testimony regarding her symptoms as of April 27, 2007 was not credible. Thus, the ALJ's credibility finding is affirmed.

## C. Dr. Kaynard's RFC Assessment

The ALJ gave only some weight to Dr. Kaynard's January 25, 2010 RFC questionnaire because it did not distinguish between Ms. Chamberlin's then-current abilities and those from during the insured period, and because it was inconsistent with Dr. Kaynard's chart notes and

---

[3] The record shows, for example, that Ms. Chamberlin reported in June 2009 having significant relief from symptoms until February 2009 when she contracted a gastrointestinal virus that caused a flare up of dysphagia and sour brash taste that continued to recur since the virus.

course of treatment from 2007. Tr. 23. Ms. Chamberlin argues that the ALJ "made an assumption not based on fact about Dr. Kaynard's assessment." Pl.'s Br. at 28. In doing so, Ms. Chamberlin concludes, the ALJ failed to include all of the proper limitations and impairments in his RFC. Pl.'s Br. 27-29.

An ALJ must determine the weight to give each source of evidence. 20 C.F.R. §§ 404.1527(d), (f), 416.927(d), (f). Opinions from "acceptable medical sources" may generally be accorded more weight than those from "other sources." *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). An ALJ may wholly or partially discount the opinion of any source, but the regulations and Ninth Circuit case law establish specific standards that an ALJ must apply in order to do so. *See* 20 C.F.R. §§ 404.1527, 416.927 (standards for evaluating medical opinions); *Lester v. Chater*, 81 F.3d 821, 830–33 (9th Cir. 1995) (standards for evaluating acceptable medical sources); *Dodrill*, 12 F.3d at 918–19 (standards for evaluating other sources). An ALJ may only reject the opinion of a doctor who has examined a claimant in favor of the differing opinion of a non-examining doctor if the ALJ "gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

Dr. Kaynard treated Ms. Chamberlin approximately every two to six months from January 2007 through the date of his RFC questionnaire. Tr. 1283. He treated her primarily for Crohn's disease, autoimmune hepatitis, GERD, and esophageal structure. Tr. 1284. As discussed above, Dr. Kaynard's notes indicate that as of April 26, 2007, Ms. Chamberlin's Crohn's disease and autoimmune hepatitis were well controlled and she was doing very well. Tr. 563. At that

time, Dr. Kaynard chose a treatment plan to taper off prednisone and monitor Ms. Chamberlin's laboratory results to see if further medication adjustments were needed. Tr. 564.

On January 25, 2010, Dr. Kaynard completed an RFC questionnaire that requested he assess Ms. Chamberlin as of September 30, 2007. Tr. 1283-88. It is not clear, however, whether he considered only her symptoms from before the last insured date in completing the form. Dr. Kaynard opined, among other things, that Ms. Chamberlin had abdominal pain, that she would have to use the restroom hourly for 15-30 minutes, that she had emotional and physical impairments, that her impairments would frequently interfere with her concentration and attention, and that she was incapable of even low stress work. Tr. 1285-86. The ALJ noted that these findings were inconsistent with Dr. Kaynard's 2007 chart notes. Tr. 23. The ALJ also found that pursuing a conservative treatment plan of monitoring laboratory results every few months was not consistent with a finding of total disability. *Id.*

Ms. Chamberlin does not allege Dr. Kaynard's 2007 notes are incomplete or inaccurate. Dr. Kaynard's medical records from 2007, as well as the medical records from Dr. Conrad from June 2007 and January 2008, contradict Dr. Kaynard's finding of a total disability in his January 25, 2010 RFC questionnaire. The contemporaneous medical notes are replete with references to how well Ms. Chamberlin was doing in 2007, including with regard to her bowel movements. Tr. 563, 567-69, 749-50, 757. Further, Dr. Kaynard's medical records from the relevant time period do not mention emotional or psychological problems or issues with concentration or attention, thus providing no clinical support for his conclusions in the RFC questionnaire relating to such impairments. Inconsistency between a doctor's responses to a questionnaire and his own medical records provides an independent specific and legitimate

reason to reject that doctor's opinion on limitations. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Thus, the ALJ has properly identified specific and legitimate reasons to give Dr. Kaynard's 2010 RFC assessment less weight—the lack of support in the medical records and the inconsistency between Dr. Kaynard's RFC questionnaire and his medical records from 2007. *See id.; Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

## D.  ALJ's RFC Formulation

Ms. Chamberlin also argues that in formulating his RFC, the ALJ failed to follow SSR 96-8p, which "requires" that the ALJ "assess a claimant's abilities on a sustained basis." Pl.'s Br. at 26. SSR 96-8p is a policy interpretation that explains that the RFC assessment ordinarily considers "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p(1), *available at* 1996 WL 374184. SSRs are binding on the Social Security Administration, but do not have the force of law and are not binding on courts. *See Holohan v. Massanari*, 246 F.3d 1199, 1202 n.1 (9th Cir. 2001). They are, however, entitled to some deference because they represent the Commissioner's interpretation of the agency's regulations. *Id.* SSR 96-8p does not impose any additional requirements on the ALJ—the ALJ is required to assess work-related activities that can be performed on a "regular and continuing basis" under 20 C.F.R. §§ 404.1545(b)-(c) and 416.945(b)-(c). SSR 96-8p provides an interpretation of what "regular and continuing basis" means. It also states that the RFC should be the *most* an individual can do despite limitations and impairments. SSR 96-8p(5). Further, the "RFC assessment considers only functional limitations

and restrictions that result from an individual's *medically determinable* impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p(2) (emphasis added); *see also* 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1528(b)-(c).

Ms. Chamberlin argues that the ALJ failed to address her ability to undertake sustained work activity, particularly by failing to consider her fatigue, need for 10 to 12 restroom breaks per work day totaling approximately two to two and one-half hours, more than two days of work missed per month because of her Crohn's disease, and her inability to concentrate or perform with the necessary pace or persistence. Pl.'s Br. at 26-27, 30. The ALJ found Ms. Chamberlin's Crohn's disease and autoimmune hepatitis to be medically determinal impairments, but for the remaining complaints he found there was no objective, acceptable medical documentation. Tr. 19-20. The ALJ discussed Ms. Chamberlin's relevant medical history, noting inconsistencies between her claims of disability and her reports to her doctors in 2007. Tr. 23.

Ms. Chamberlin's reports to Dr. Kaynard in April and June of 2007, her reports to Dr. Conrad in June 2007 and January 2008, and her admission at the hearing that her hepatitis was controlled as of April 2007 support the ALJ's determination of medical improvement with regard to Ms. Chamberlin's fatigue and other symptoms related to her autoimmune hepatitis as of April 27, 2007, and the ALJ's associated RFC assessment. Tr. 45, 46, 563-64, 749-50, 757, 1036. Ms. Chamberlin's reports to her treating physicians in 2007 also show that her Crohn's disease was in remission at that time and that, although she needed to use the restroom approximately seven to ten times per day and had "occasional" loose stool, it was not severe enough that she wanted to pursue additional treatment. *Id*. This supports the ALJ's determination of medical improvement with regard to Ms. Chamberlin's Crohn's disease as of April 27, 2007,

and the ALJ's associated RFC assessment. The ALJ did not need specifically to address the alleged fatigue (caused by hepatitis) or significant work absences caused by active Crohn's disease in his RFC because the ALJ does not need to prepare "a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record." *Bowliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

The ALJ did not include concentration, pace, or persistence limitations in his RFC. The ALJ, however, had not found such symptoms to be medically determinable. Tr. 19-20. Accordingly, he was not obligated to include those symptoms in his RFC. *See, e.g.,* SSR 96-8p(2). The medical records support the ALJ's conclusion. The records do not demonstrate problems with concentration, pace, or persistence as of the last insured date. These were not problems raised by Ms. Chamberlin or addressed by her treating physicians at the time. Further, the Function Report submitted by Ms. Chamberlin's husband on May 23, 2007, states that Ms. Chamberlin "reads and follows very well…follows spoken instructions very well" and that she can concentrate for "2-3 hours before becoming bored." Tr. 149. Ms. Chamberlin's own Function Report states that she can pay attention for two to three hours, depending in the project, that she follows written instructions "Fine!" and that she follows spoken instructions "fine or well, but better if I am shown what to do along with spoken instruction." Tr. 141.

The ALJ's RFC assessment is consistent with the medical records and with the assessment of the state agency reviewing physician, Dr. Martin Kehrli. Tr. 767-774. State agency reviewing doctors are highly qualified experts in Social Security disability evaluations. 20 C.F.R. § 404.1527(e)(2)(i). The Court finds the ALJ properly weighed the evidence, gave sufficient

justification for his findings regarding Ms. Chamberlin's functional abilities, and there is substantial evidence in the record supporting his conclusions.

## CONCLUSION

The Commissioner's decision that Ms. Chamberlin is not disabled is AFFIRMED.

DATED this 11th day of February, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge